UNITED STATES COURT OF APPEALS
FOR THE FOURTH CIRCUIT

**No. 14-2299**

UNITED STATES ex rel. STEVEN MAY AND ANGELA RADCLIFFE,

       Plaintiff - Appellant,

  and

STATE OF CALIFORNIA; STATE OF GEORGIA; STATE OF ILLINOIS;
STATE OF NEW YORK; STATE OF TENNESSEE,

       Plaintiffs,

    v.

PURDUE PHARMA L.P., a limited partnership, and; PURDUE
PHARMA, INC.,

       Defendants - Appellees.

Appeal from the United States District Court for the Southern
District of West Virginia, at Beckley.  Irene C. Berger,
District Judge. (5:10-cv-01423)

Argued: October 29, 2015      Decided: January 29, 2016

Before TRAXLER, Chief Judge, and AGEE and DIAZ, Circuit Judges.

Affirmed by published opinion.  Judge Diaz wrote the opinion, in
which Chief Judge Traxler and Judge Agee joined.

**ARGUED:** Mark Tucker Hurt, THE LAW OFFICES OF MARK T. HURT,
Abingdon, Virginia, for Appellant.  Daniel Stephen Volchok,
WILMER CUTLER PICKERING HALE AND DORR LLP, Washington, D.C., for

Appellees.  **ON BRIEF:** Paul W. Roop, II, ROOP LAW OFFICE, LC, Beckley, West Virginia, for Appellant.  Howard M. Shapiro, Christopher E. Babbitt, Charles C. Speth, Ariel Hopkins, WILMER CUTLER PICKERING HALE AND DORR LLP, Washington, D.C., for Appellees.

DIAZ, Circuit Judge:

Steven May and Angela Radcliffe (the "Relators") appeal the district court's dismissal of their qui tam action under the False Claims Act ("FCA"), 31 U.S.C. § 3729 et seq. They contend that the district court incorrectly concluded that (1) the pre-2010 version of the FCA's "public disclosure bar," 31 U.S.C. § 3730(e)(4) (2009), divested the court of subject matter jurisdiction; and, alternatively, (2) the Relators failed to plead fraud in accordance with Federal Rule of Civil Procedure 9(b). We agree that the public disclosure bar left the district court without jurisdiction over the Relators' FCA claims; therefore, we do not reach the court's alternative ground for dismissal. Accordingly, we affirm.

I.

The FCA allegations at issue have enjoyed a long though not particularly fruitful life, having reached this court now for the third time. Ten years ago, Mark Radcliffe—a former district sales manager for Purdue Pharma ("Purdue")—filed a qui tam action under the FCA against Purdue. United States ex rel. Radcliffe v. Purdue Pharma L.P., 600 F.3d 319, 321–22 (4th Cir. 2010). He alleged a fraudulent scheme whereby Purdue marketed the pain medication OxyContin as having a falsely inflated 2:1 equianalgesic ratio—which is a measure of a painkiller's

3

potency—as compared to one of Purdue's older pain drugs, MS Contin. Id. at 321. By overstating the ratio, Radcliffe claimed, Purdue deceived physicians into prescribing—and the federal government into paying for—OxyContin instead of less costly MS Contin. Id. at 321-22 & n.3. In 2010, we held that Radcliffe's qui tam action must be dismissed based on a release he executed upon accepting a severance package from Purdue after it restructured its workforce. Id. at 322 & n.2, 324.

Less than two months after the Supreme Court denied Radcliffe's petition for certiorari, United States ex rel. Radcliffe v. Purdue Pharma, L.P., 562 U.S. 977 (2010), his wife Angela decided to "take up . . . the baton" and file the qui tam action against Purdue now before the court. J.A. 434. Joining her as a relator is Steven May, a former Purdue employee who worked under Mr. Radcliffe. One of their attorneys is Mark Hurt, who was Mr. Radcliffe's counsel throughout his qui tam action.

The allegations in the Relators' lawsuit are "nearly identical to" those pursued by Mr. Radcliffe. United States ex rel. May v. Purdue Pharma L.P., 737 F.3d 908, 911 (4th Cir. 2013), cert. denied, 135 S. Ct. 2376 (2015). While the district court found that the Relators did not base their allegations on a personal review of the documents filed in Mr. Radcliffe's suit, the court concluded that their "contribution to the case

4

was essentially to provide plaintiffs' names not associated with the release that barred Mr. Radcliffe's suit." J.A. 1323–24. The facts of the fraudulent scheme alleged in this action come from Mr. Hurt, who "simply used his own knowledge developed during [Mr. Radcliffe's suit] and the documents provided by Mr. Radcliffe . . . to draft the pleadings here." J.A. 1323.

The district court dismissed the Relators' suit on res judicata grounds, giving preclusive effect to Mr. Radcliffe's qui tam action. United States ex rel. May v. Purdue Pharma L.P., No. 10-cv-01423, 2012 WL 4056720, at *4–5 (S.D.W. Va. Sept. 14, 2012). We vacated that judgment, holding that Mr. Radcliffe's release "was personal to him" and "could not serve as a defense to any claims that the Relators (or other non-signatories) might assert against Purdue." May, 737 F.3d at 913–14, 920. And while Purdue argued that we could affirm the district court's dismissal on the alternative theory that the public disclosure bar precluded the Relators' action, we explained that ruling on that issue would be premature, as the district court had not made the requisite jurisdictional findings of fact. Id. at 919–20.

On remand, the district court dismissed the Relators' amended complaint, holding that their allegations were based on the claims from Mr. Radcliffe's suit and therefore the public disclosure bar stripped the court of subject matter

5

jurisdiction. In the alternative, the court (1) held that the Relators failed to plead fraud with particularity under Rule 9(b), and (2) denied the Relators leave to further amend their complaint.[1]

This appeal followed.

## II.

### A.

The FCA provides a cause of action "against anyone who 'knowingly presents' to the government 'a false or fraudulent claim for payment or approval.'" United States ex rel. Owens v. First Kuwaiti Gen. Trading & Contracting Co., 612 F.3d 724, 728 (4th Cir. 2010) (quoting § 3729(a)(1)). "In adopting the FCA, 'the objective of Congress was broadly to protect the funds and property of the government.'" Id. (quoting Rainwater v. United States, 356 U.S. 590, 592 (1958)).

To fulfill this objective, the FCA in certain circumstances permits qui tam actions, which "provide cash bounties . . . to private citizens who successfully bring suit against those who defraud the federal government." United States ex rel.

---

[1] The Relators also alleged various state law claims. The district court explained that "[t]o the extent dismissal of the state law claims is not required by the Court's previous findings, the Court declines to exercise supplemental jurisdiction over those claims." J.A. 1336.

*Springfield Terminal Ry. Co. v. Quinn*, 14 F.3d 645, 649 (D.C. Cir. 1994). One barrier to bringing a qui tam action under the FCA, however, is its "public disclosure bar." While Congress amended the public disclosure bar in 2010, we held that in the instant case, which involves allegations between 1996 and 2005, the pre-2010 version of the bar governs. *May*, 737 F.3d at 914–18. It provides:

> No court shall have jurisdiction over an action under this section based upon the public disclosure of allegations or transactions in a criminal, civil, or administrative hearing . . . unless the action is brought by the Attorney General or the person bringing the action is an original source of the information.

31 U.S.C. § 3730(e)(4)(A) (2009).

We interpret the phrase "based upon" in the pre-2010 public disclosure bar differently than our sister circuits. *United States ex rel. Ondis v. City of Woonsocket*, 587 F.3d 49, 57 (1st Cir. 2009) (discussing the circuit split on this issue and observing that "[t]his leaves the Fourth Circuit alone among the courts of appeals in favoring a narrow reading of the [public disclosure bar's] 'based upon' language"). While other circuits read the phrase to bar FCA claims that are "substantially similar to" or "supported by" publicly disclosed information, *see, e.g.*, *id.*; *United States ex rel. Bledsoe v. Cmty. Health Sys., Inc.*, 342 F.3d 634, 646 (6th Cir. 2003), we interpret it to preclude actions "only where the relator has actually derived

7

from [a public] disclosure the allegations upon which his <u>qui tam</u> action is based," <u>United States ex rel. Siller v. Becton Dickinson & Co.</u>, 21 F.3d 1339, 1348 (4th Cir. 1994). This test is satisfied if a relator's claim is "even partly" derived from prior public disclosures. <u>United States ex rel. Vuyyuru v. Jadhav</u>, 555 F.3d 337, 351 (4th Cir. 2009).[2]

A relator bears the burden of proving that the public disclosure bar does not preclude his FCA action. <u>Id.</u> at 347. When a relator cannot clear the pre-2010 version of the public disclosure bar, the court is divested of subject matter jurisdiction. § 3730(e)(4)(A); <u>see also</u> <u>May</u>, 737 F.3d at 916. We review the district court's legal conclusions de novo and its jurisdictional findings of fact for clear error. <u>United States ex rel. Wilson v. Graham Cty. Soil & Water Conservation Dist.</u>, 777 F.3d 691, 695 (4th Cir. 2015).

B.

The Relators argue that their allegations are not "actually derived from" a public disclosure and therefore the district court had subject matter jurisdiction. In support, they highlight the district court's finding that they did not personally review the filings in Mr. Radcliffe's lawsuit prior

---

[2] The public disclosure bar contains an exception for relators who are the "original source" of their allegations. § 3730(e)(4)(A). Here, the Relators do not argue that the original source exception applies.

8

to instituting this action.[3] They also point out that although their attorneys' knowledge is imputed to them, Appellant's Br. at 21; accord Appellee's Br. at 13, Mr. Hurt and his co-counsel "had already learned of all of the allegations in [Mr. Radcliffe's] complaint previously from nonpublic sources," Appellant's Br. at 22; accord Appellee's Br. at 5 (explaining that this is "necessarily so" because the Relators' counsel prepared the filings in Mr. Radcliffe's case).

Accordingly, we must determine whether the Relators can sidestep the public disclosure bar when their allegations—though not directly stemming from the docket entries in Mr. Radcliffe's lawsuit—are derived from facts their attorney learned while representing Mr. Radcliffe and preparing the public filings in his case. We hold that the district court correctly dismissed the Relators' suit.

The Relators' claim of error rises and falls with our decision in Siller. Accordingly, we turn to that case. In Siller, the relator worked for a company, Scientific Supply, that had filed suit against Becton Dickinson alleging that it had "canceled [Scientific Supply's] distributorship because it feared that [Scientific Supply] . . . would disclose that [it] was overcharging the government." 21 F.3d at 1340–41.

---

[3] There is no dispute that the filings in Mr. Radcliffe's lawsuit are qualifying public disclosures under § 3730(e)(4)(A).

Scientific Supply and Becton Dickinson ultimately settled their lawsuit.  Id. at 1341.  Over a year after the settlement, the relator filed his qui tam action against Becton Dickinson.  Id. He claimed that "he originally learned that [Becton Dickinson] overcharged the government through his employment with [Scientific Supply], not as a result of [Scientific Supply's] suit against [Becton Dickinson]."  Id.  Indeed, the relator alleged that he learned of the fraud before Scientific Supply filed suit and that he had not read Scientific Supply's complaint until after he filed his qui tam action.  Id.

After parsing the meaning of the term "based upon" in the public disclosure bar, we held that the bar is triggered when "the relator has actually derived from [a public] disclosure the allegations upon which his qui tam action is based."  Id. at 1348.  Applying this test, we observed that "[i]t [was] certainly possible that, as [the relator] contends, [he] actually learned of [Becton Dickinson's] alleged fraud entirely independently of the [Scientific Supply] suit, and derived his allegations from that independent knowledge."  Id. at 1349. Thus, we concluded that the district court improperly dismissed the relator's action under the public disclosure bar and we remanded for further fact finding "because the district court made no finding on whether [the relator] actually derived his allegations from the [Scientific Supply] suit, a finding

10

necessary to the conclusion that [the relator's] action was 'based upon' that suit." Id.

Here, unlike in Siller, it is clear that the Relators did not independently discover the facts underpinning their allegations. Additionally, we know beyond doubt that the Relators did not learn of the alleged fraud "entirely independently of" a prior lawsuit, as may have been true for the relator in Siller. Instead, the Relators' knowledge in this case stems from their attorney's involvement in Mr. Radcliffe's qui tam action.

Moreover, Siller anticipated that in factual circumstances similar to those involved here, application of our "actually derived from" test would result in dismissal. In reaching our understanding of the "based upon" language in the public disclosure bar, we rejected a broader statutory construction set out in United States ex rel. Doe v. John Doe Corp., 960 F.2d 318 (2d Cir. 1992). See Siller, 21 F.3d at 1347–49.

In Doe, the relator was an attorney who learned of the facts alleged in his FCA action while representing a John Doe Corp. employee—who was instrumental in carrying out a fraudulent scheme for the corporation—during a grand jury proceeding. Doe, 960 F.2d at 320, 324. Prior to that proceeding, however, government investigators had divulged the fraudulent scheme to innocent John Doe Corp. employees. Id. at 319–20, 322–24. The

11

relator contended that his allegations were not "based upon" those public disclosures. Id. at 324. The Second Circuit rejected this argument, explaining that the relator's allegations "[were] the same as those that had been publicly disclosed" and, under the court's interpretation of the FCA's "based upon" language, the "[p]ublic disclosure of the allegations divests district courts of jurisdiction over qui tam suits, regardless of where the relator obtained his information." Id.

Although the court in Siller disagreed with the Second Circuit's statutory construction of the term "based upon," it did not reject the Second Circuit's ultimate resolution of the case under the public disclosure bar. The court explained:

> [In Doe], the qui tam plaintiff was an attorney who only learned of the pertinent fraud allegations through his representation of a client whose employer was being investigated for suspected fraudulent billing practices in its transactions with the Government. However, under our reading of section 3730(e)(4), which we believe is more faithful to the enacted language, the same result might well obtain.

Siller, 21 F.3d at 1348 n.8 (emphasis added). Though this language is dicta, it guides our application of Siller to the case before us. Like the relator in Doe, Mrs. Radcliffe and Mr. May did not learn of their allegations directly from the public disclosures at issue—in this case, the docket entries from Mr. Radcliffe's case. And, much like in Doe, the Relators' claims

12

here are based on what their attorney learned when representing another client in a matter involving the same fraud allegations.[4] Finally, as in Doe, the allegations in the Relators' complaint were publicly disclosed before suit was filed. In Siller, we suggested that facts like these would trigger the public disclosure bar, requiring dismissal. We now so hold.

The result we reach here is also consistent with the purpose of the public disclosure bar. Section 3730(e)(4) "is designed to strike a balance between empowering the public to expose fraud on the one hand, and 'preventing parasitic actions' on the other." Wilson, 777 F.3d at 695 (quoting Siller, 21 F.3d at 1348). Thus, the FCA encourages whistleblowing by financially rewarding those who successfully bring qui tam actions. See § 3730(d); Graham Cty. Soil & Water Conservation Dist. v. United States ex rel. Wilson, 559 U.S. 280, 294 (2010) (discussing the public disclosure bar and how it is designed in part to provide "adequate incentives for whistle-blowing insiders with genuinely valuable information" (quoting Quinn, 14 F.3d at 649)). "At the same time, however, Congress sought to prevent 'parasitic' qui tam actions in which relators, rather

---

[4] That the relator in Doe was himself the attorney in the proceeding in which he learned of the facts supporting his fraud allegations does not distinguish Doe in a meaningful way. As previously noted, the parties agree that Mr. Hurt's knowledge is imputed to Mr. May and Mrs. Radcliffe.

than bringing to light independently-discovered information of fraud, simply feed off previous disclosures of government fraud." Siller, 21 F.3d at 1347.

Purdue argues that the Relators' FCA claim is a quintessential parasitic action because they provide no useful new information but instead effectively copy the substance of Mr. Radcliffe's earlier suit. The Relators respond that the FCA is meant to encourage actions like the instant one in which the qui tam plaintiffs learned of fraud second-hand. To support this contention, the Relators point to the legislative history of the FCA's 1986 amendments,[5] which they say shows that Congress intended to increase the number of FCA qui tam actions to supplement the government's efforts to prosecute fraud.

Purdue has the better of the statutory-purpose argument. While Congress intended the 1986 amendments to increase the number of qui tam actions under the FCA, Congress did not invite

---

[5] Among other changes, the 1986 amendments to the FCA eliminated the "government knowledge" jurisdictional bar and replaced it with the public disclosure bar at issue here. Compare 31 U.S.C. § 3730(b)(4) (1982), with False Claims Amendments Act of 1986, Pub. L. No. 99-562, § 3, 100 Stat. 3153, 3154, 3157. The government knowledge bar precluded "qui tam actions that were 'based on evidence or information the government had when the action was brought.'" United States ex rel. Stinson, Lyons, Gerlin & Bustamante, P.A. v. Prudential Ins. Co., 944 F.2d 1149, 1153 (3d Cir. 1991) (quoting 31 U.S.C. § 3730(b)(4) (1982)). By eliminating that bar, the 1986 amendments, as the Relators argue, were in part intended to increase the number of FCA qui tam actions. See id. at 1154.

14

a free-for-all for aspiring relators salivating over the FCA's qui tam reward provision. <u>See</u> § 3730(d). Instead, Congress intended only to supplement the government's ability to prosecute FCA actions as long as—consistent with the twin aims of the public disclosure bar—parasitic claims are barred and whistleblowing is encouraged. Though the FCA surely is meant to incentivize people like Mr. Radcliffe to come forward, it is not designed to encourage lawsuits by individuals like the Relators who (1) know of no useful new information about the scheme they allege, and (2) learned of the relevant facts through knowledge their attorney acquired when previously litigating the same fraud claim.

Accepting the view of the Relators also leads to absurd results. Imagine the following: an attorney prepares a draft complaint alleging an FCA violation, makes some insubstantial edits, and then files it. Under the Relators' reading of the FCA, a person who copied the earlier draft would limbo under the public disclosure bar, while someone who copied the filed complaint would rightly be labeled a parasitic relator, barred from pursuing an FCA action. That cannot be the law.

In sum, we decline the Relators' invitation to read <u>Siller</u> so as to render it internally inconsistent and at odds with the public disclosure bar's purpose. Indeed, by foreshadowing the court's conclusion in this case, <u>Siller</u> itself eschews the

15

interpretation the Relators urge.  Here, the Relators' claims are based on facts their counsel learned in the course of making the prior public disclosure of Purdue's allegedly fraudulent scheme.  Accordingly, we hold, consistent with our reasoning in Siller and the public disclosure bar's purpose, that the district court correctly dismissed the Relators' suit.

### III.

For the reasons given, we affirm the judgment of the district court.

AFFIRMED