**PUBLISHED**

UNITED STATES COURT OF APPEALS
FOR THE FOURTH CIRCUIT

_____

**No. 15-1148**

_____

UNITED STATES ex rel. LYLE BEAUCHAMP; UNITED STATES ex rel. WARREN SHEPHERD,

        Plaintiffs – Appellants,

        v.

ACADEMI TRAINING CENTER, LLC., f/k/a U.S. Training Center Inc., f/k/a USTC,

        Defendants – Appellees,

        and

XE SERVICES LLC, f/k/a EP Investments LLC, d/b/a Blackwater Worldwide; U.S. TRAINING CENTER INC., ("USTC"); USTC HOLDINGS LLC,

        Defendants.

_____

Appeal from the United States District Court for the Eastern District of Virginia, at Alexandria. T. S. Ellis, III, Senior District Judge. (1:11-cv-00371-TSE-TRJ)

_____

Argued: October 29, 2015      Decided: February 25, 2016

_____

Before TRAXLER, Chief Judge, and AGEE and DIAZ, Circuit Judges.

_____

Vacated and remanded by published opinion. Judge Agee wrote the opinion, in which Chief Judge Traxler and Judge Diaz joined.

**ARGUED:** William Edgar Copley, III, WEISBROD MATTEIS & COPLEY PLLC, Washington, D.C., for Appellants. Tara Melissa Lee, DLA PIPER LLP(US), Reston, Virginia, for Appellees. **ON BRIEF**: Janet L. Goetz, Susan M. Sajadi, William E. Jacobs, WEISBROD MATTEIS & COPLEY PLLC, Washington, D.C., for Appellants. Joseph C. Davis, Reston, Virginia, Courtney G. Saleski, Philadelphia, Pennsylvania, Paul D. Schmitt, DLA PIPER LLP(US), Washington, D.C., for Appellees.

---

AGEE, Circuit Judge:

Lyle Beauchamp and Warren Shepherd ("Relators") filed a complaint alleging that Academi Training Center, Inc. ("Academi") knowingly submitted false claims to the United States under the False Claims Act ("FCA"), 31 U.S.C. §§ 3729-3733, in connection with a government contract to provide security services in Iraq and Afghanistan. Citing the FCA's public-disclosure bar, which generally prohibits FCA suits based on allegations that have already entered the public domain, 31 U.S.C. § 3730(e)(4), the district court dismissed the complaint. The primary question presented on appeal is whether the district court correctly applied § 3730(e)(4) when the sole public disclosure it found preclusive, a magazine article, was published more than a year after Relators first pled the alleged fraud. For the reasons that follow, we find the public-disclosure bar inapplicable in this case. Accordingly, we vacate the judgment of the district court and remand the case for further proceedings.

I.

To place the controversy before us in context, we start with the relevant statutory framework. Enacted during the Civil War to prevent fraud by military contractors, the FCA imposes civil liability on persons who knowingly submit false claims for

3

goods and services to the United States.  31 U.S.C. § 3729; see also U.S. ex rel. Springfield Terminal Ry. Co. v. Quinn, 14 F.3d 645, 649 (D.C. Cir. 1994) (discussing the statute's history). To encourage the disclosure of fraud that might otherwise escape detection, the FCA permits private individuals, denominated as relators, to file qui tam[1] actions on behalf of the government and collect a bounty from any recovery.  See 31 U.S.C. § 3730(b).  The relator must file his or her complaint under seal and notify the government, who can either intervene or allow the relator to proceed alone.  Id.

Although designed to incentivize whistleblowers, the FCA also seeks to prevent parasitic lawsuits based on previously disclosed fraud.  See U.S. ex rel. Wilson v. Graham Cty. Soil & Water Conservation Dist., 777 F.3d 691, 695 (4th Cir. 2015).  To balance these conflicting goals, Congress has set careful limits on qui tam suits.  Pertinent here is the public-disclosure bar, which disqualifies private suits based on fraud already disclosed in particular settings -- such as hearings, government reports, or news reports -- unless the relator meets the

---

[1] "Qui tam" is shorthand in current legal usage for the Latin phrase "qui tam pro domino rege quam pro se ipso in hac parte sequitur," which means "who pursues this action on our Lord the King's behalf as well as his own."  Vt. Agency of Nat. Res. v. U.S. ex rel. Stevens, 529 U.S. 765, 768 n.1 (2000).

4

definition of an "original source" under the FCA. 31 U.S.C. § 3730(e)(4).

Two versions of the public-disclosure bar are relevant to this appeal given the timeframe of the alleged underlying fraud. In 2007, when the alleged scheme began, the statutory limitation read as follows:

> No court shall have jurisdiction over an action under this section based upon the public disclosure of allegations or transactions in a criminal, civil, or administrative hearing, in a congressional, administrative, or Government Accounting Office report, hearing, audit, or investigation, or from the news media, unless the action is brought by the Attorney General or the person bringing the action is an original source of the information.

31 U.S.C. § 3730(e)(4)(A) (2005). We interpreted this version of the public-disclosure bar "as a jurisdictional limitation -- the public-disclosure bar, if applicable, divest[s] the district court of subject-matter jurisdiction over the action." U.S. ex rel. May v. Purdue Pharma L.P., 737 F.3d 908, 916 (4th Cir. 2013).

Congress amended the FCA, effective March 23, 2010, and revised several parts of the public-disclosure bar. See id. at 914. Post-amendment, the provision provides:

> The court shall dismiss an action or claim under this section, unless opposed by the Government, if substantially the same allegations or transactions as alleged in the action or claim were publicly disclosed—

5

> > (i) in a Federal criminal, civil, or administrative hearing in which the Government or its agent is a party;
>
> > (ii) in a congressional, Government Accountability Office, or other Federal report, hearing, audit, or investigation; or
>
> > (iii) from the news media,
>
> > unless the action is brought by the Attorney General or the person bringing the action is an original source of the information.

31 U.S.C. § 3730(e)(4)(A) (2010).

We have described the 2010 amendments as "significantly chang[ing] the scope of the public-disclosure bar." May, 737 F.3d at 917. Among other things, the revised statute deleted the "jurisdiction-removing language previously contained in § 3730(e)(4) and replaced it with a generic, not-obviously-jurisdictional phrase," making it "clear that the public-disclosure bar is no longer a jurisdiction-removing provision." Id. at 916. Post-amendment, the public-disclosure bar is a grounds for dismissal -- effectively, an affirmative defense -- rather than a jurisdictional bar. See U.S. ex rel. Osheroff v. Humana, Inc., 776 F.3d 805, 810 (11th Cir. 2015) ("We conclude that the amended § 3730(e)(4) creates grounds for dismissal for failure to state a claim rather than for lack of jurisdiction.").

The amended statute also changed the required connection between the plaintiff's claims and the public disclosure. Under the prior version, a qui tam action was barred only if it was "based upon" a qualifying public disclosure, a standard we interpreted to mean that the plaintiff must have "actually derived" his knowledge of the fraud from the public disclosure. U.S. ex rel. Siller v. Becton Dickinson & Co., 21 F.3d 1339, 1348 (4th Cir. 1994), superseded on other grounds as recognized in May, 737 F.3d at 917. "As amended, however, the public-disclosure bar no longer requires actual knowledge of the public disclosure, but instead applies if substantially the same allegations or transactions were publicly disclosed." May, 737 F.3d at 917.[2]

Against this backdrop, we now turn to the case before us.

## II.

### A.

In 2005, the U.S. Department of State hired Academi to provide security services for officials and embassy workers stationed across the Middle East. The agreement required Academi's personnel to maintain a certain degree of proficiency

---

[2] We have omitted internal quotation marks, alterations, and citations here and throughout this opinion, unless otherwise noted.

with several firearms and called for Academi to submit marksmanship scores to the State Department on a regular basis. Specifically, each security contractor was required to periodically qualify at a set level of proficiency with (i) the Glock 19 pistol, (ii) the Colt M4 rifle, (iii) the Remington 870 shotgun, (iv) the M240 belt-fed machine gun, and (v) the M249 belt-fed machine gun.

Relators, both former security contractors with Academi, filed their complaint in the Eastern District of Virginia in April 2011. In the initial complaint, Relators alleged that Academi submitted false reports and bills to the State Department for contractors employed in positions in which they did not actually work and also defrauded the State Department by requesting payment for unissued equipment. The initial complaint was filed under seal, with notification to the Government as required by the FCA. See 31 U.S.C. § 3730(b)(2).

Shortly thereafter, on May 24, 2011, Relators filed their first-amended complaint. Relevant here, Relators added new allegations of a separate fraudulent scheme that, from April 2007 through April 2011, Academi routinely failed to qualify its contractors on two of the required weapons -- the M-240 and M-249 belt-fed machine guns -- and fabricated scorecards showing proficiency with these firearms for submission to the State Department. As a result, the first-amended complaint alleged

8

that Academi fraudulently billed the State Department for security services performed by contractors who had not been tested for, much less achieved, the requisite marksmanship scores (hereinafter, the "weapons qualification scheme"). Relators provided specific dates of the alleged weapons qualification scheme and maintained that they, personally, were never certified with these weapons during their deployments.

While Relators' first-amended complaint remained pending, two former firearm instructors with Academi, Robert Winston and Allan Wheeler, contacted Relators' counsel with additional information about the weapons qualification scheme. Eventually, Winston and Wheeler filed a separate lawsuit against Academi (the "Winston complaint"), alleging they were wrongfully terminated from their employment with Academi for reporting the weapons qualification scheme up the chain of command. See Winston v. Academi Training Ctr., Inc., No. 1:12cv767, ECF No. 1 (E.D. Va. July 12, 2012). The Winston complaint detailed the State Department contract, the weapons qualification testing requirements, and Academi's failure to conduct proper marksmanship testing. Id. Notably, however, the Winston complaint was not filed as a qui tam action, so its allegations were not under seal and were thus available to the public from the date of its filing.

The Winston complaint generated media attention, and on July 16, 2012, an online news publication, Wired.com, published a story about the case. See Spencer Ackerman, Mercenaries Sue Blackwater Over Fake Gun Tests, Wired (July 16, 2012, 4:00 AM), http://www.wired.com/2012/07/blackwater-lawsuit/. The article described the Winston plaintiffs' allegations of retaliation and the weapons qualification scheme, specifically explaining how Academi "falsif[ied] dozens of marksmanship tests for [its] security contractors." Id. The article also mentioned by name the Relators' pending qui tam suit.

Ultimately, the Government declined to intervene in Relators' case and it was unsealed. Relators then filed a second-amended complaint on November 19, 2012, which became the operative pleading. In addition to inserting non-qui tam claims that are not relevant on appeal, the second-amended complaint expanded the allegations as to the weapons qualification scheme by adding a number of paragraphs from the Winston complaint that further detailed the State Department contract and Academi's alleged failure to meet its weapons testing requirements.

B.

Academi moved to dismiss Relators' qui tam claims under the first-to-file and public-disclosure bars, as well as for failing to meet the pleading requirements of Federal Rule of Civil Procedure 9(b). See Harrison v. Westinghouse Savannah River

10

Co., 176 F.3d 776, 783–84 (4th Cir. 1999) (explaining that suits brought under the FCA sound in fraud, and thus are "subject to Federal Rule of Civil Procedure 9(b), which requires that claimants plead fraud with particularity").

The district court granted Academi's motion. Specifically, the court rejected the weapons qualification scheme under the public-disclosure bar.[3] Using the post-2010 amended version of the FCA, the court first determined that the Wired.com article was a "public disclosure" as that term is defined in the statute. U.S. ex rel. Beauchamp v. Academi Training Ctr., Inc., 933 F. Supp. 2d 825, 845 (E.D. Va. 2013). With that prerequisite established, the court then turned to the timing of the article's disclosure, noting it must precede Relators' suit in order to function as a bar. Id. Because Relators had amended their complaint several times, the issue became which was the proper pleading for purposes of the statutory timing benchmark. Citing Rockwell International Corp. v. United States, 549 U.S. 457 (2007), the district court determined that only the most recent complaint was relevant to this analysis. See Beauchamp, 933 F. Supp. 2d at 845 ("The public disclosure bar inquiry applies to 'the allegations in the original

---

[3] The district court also dismissed Relators' other claims on the merits. See Beauchamp, 933 F. Supp. 2d at 841-43. Relators have not challenged those decisions in this appeal.

complaint as amended[,]' [and thus] 'courts look to the amended complaint to determine jurisdiction.'"). Observing that Relators' last pleading -- the second-amended complaint -- postdated the Wired.com article, the court concluded that the article was a qualifying public disclosure so the public-disclosure bar applied. Id.

The court then considered whether Relators were nonetheless protected under the original source exception. The court found this exception inapplicable because Relators failed to disclose Academi's fraud to the government in accordance with the statute. Id. at 845-46.

In light of those determinations, the district court declined to address Academi's Rule 9(b) arguments. See id. at 846 n.40. This appeal followed, and we have jurisdiction under 28 U.S.C. § 1291.

III.

Relators' appeal is limited to the weapons qualification scheme and the district court's application of the public-disclosure bar. They first argue that the district court erred when it found the Wired.com article was a qualifying public

disclosure.[4]  Relators contend this story could not have triggered the bar because it was published <u>after</u> the first-amended complaint initially alleged the weapons qualification scheme.  On this point, they specifically dispute the district court's conclusion that <u>Rockwell</u> "requir[ed] it to consider only the most recent complaint to determine when Relators alleged Academi's [scheme] for purposes of § 3730(e)(4)(A)."  Opening Br. 32-22.  Alternatively, Relators argue that, even if the district court was correct regarding the Wired.com article, the public-disclosure bar does not apply here because Relators' suit falls under the original source exception.[5]

---

[4] The phrase "qualifying public disclosure" is a term of art used to identify a public disclosure that meets the statutory requirements of § 3730(e)(4)(A) and therefore triggers the bar. <u>See</u> <u>May</u>, 737 F.3d at 919-20.

[5] The parties agreed below, and the district court applied, the post-amendment public-disclosure bar as the appropriate statutory framework.  Academi now contests its application in light of intervening precedent holding that the 2010 FCA amendments should not be employed retroactively.  <u>See</u> <u>May</u>, 737 F.3d at 917-18.  Academi argues that because its alleged fraud spans 2010, the district court should "have split the public disclosure analysis between the current and former versions of the [public-disclosure bar] depending upon [when the] conduct occurred."  Response Br. 17-18.  Academi concedes that it did not raise this issue below but contends we should reach it now by applying, in the first instance, the pre-amendment public-disclosure bar to the pre-March 23, 2010 allegations.

Ordinarily, Academi's concession would constitute waiver of the issue and preclude our review.  <u>See</u> <u>United States v. Evans</u>, 404 F.3d 227, 236 n.5 (4th Cir. 2005).  However, we do not find waiver here since there could be jurisdictional implications. <u>See</u> <u>May</u>, 737 F.3d at 916 ("Under the prior version of the statute, § 3730(e)(4) operated as a jurisdictional limitation --
(Continued)

13

A.

The public-disclosure bar aims "to strike a balance between encouraging private persons to root out fraud and stifling parasitic lawsuits" in which a relator, instead of plowing new ground, attempts to free-ride by merely reiterating previously disclosed fraudulent acts. Graham Cty. Soil & Water Conservation Dist. v. U.S. ex rel. Wilson, 559 U.S. 280, 295 (2010). In line with this objective, the bar applies only when information exposing the fraud has already entered the public domain prior to the relator's suit. Id. at 296 n.16 (explaining that "parasitic lawsuits" arise when "those who learn of the fraud through public channels . . . seek remuneration although they contributed nothing to the exposure of the fraud"). Hence, courts considering whether the public-disclosure bar applies must resolve, among other things, when the public disclosure occurred in relation to the relator's claims. U.S. ex rel. Gear v. Emergency Med. Assocs. of Ill., Inc., 436 F.3d 726, 728 (7th

---

the public-disclosure bar, if applicable, divested the district court of subject-matter jurisdiction over the action."). Nonetheless, while subject matter jurisdiction issues may exist in other cases regarding which version of the FCA applies, that distinction does not affect the resolution of this case. Even conceding Academi is correct as to bifurcating the analysis of a claim which spans the amendment of the statute, the district court's decision below was erroneous under either version of the public-disclosure bar. Thus, we need delve no further into Academi's arguments on this point.

Cir. 2006) ("The first issue, then, is whether the information on which the complaint is based was already publicly disclosed when [the relator] filed his complaint.").

The parties agree that the Wired.com article is a "public disclosure" as that term is statutorily defined under either the pre- or post-amendment version of the FCA.[6]  See Malhotra v. Steinberg, 770 F.3d 853, 858 (9th Cir. 2014) ("[T]he existence of a public disclosure is a threshold condition for application of the bar.").  We also agree.  Thus, if the Wired.com article came later than the applicable part of Relators' claims, the public-disclosure bar has no application here.

It is undisputed that Relators initially pled the weapons qualification scheme in their first-amended complaint more than a year before the Wired.com story.  Following that article, however, Relators filed a second-amended complaint that re-alleged this fraud and added further detail about it gleaned from the article.  Academi argued, and the district court agreed, that under the Supreme Court's decision in Rockwell,

---

[6] Courts have unanimously construed the term "public disclosure" to include websites and online articles.  See Schindler Elevator Corp. v. U.S. ex rel. Kirk, 563 U.S. 401, 408 (2011) ("The other sources of public disclosure in § 3730(e)(4)(A), especially 'news media,' suggest that the public disclosure bar provides 'a broa[d] sweep.'"); Osheroff, 776 F.3d at 813 (concluding that newspapers and publicly available websites qualified as "news media" under the public disclosure provision).

Relators' last pleading was the appropriate statutory timing benchmark when applying the public-disclosure bar. See Beauchamp, 933 F. Supp. 2d at 845. And because Relators' second-amended complaint postdated the Wired.com article, the district court found that story to be a qualifying public disclosure that triggered the bar. Id. In substance, the district court concluded that the timing of Relators' claims for public-disclosure bar purposes was set by the filing date of their most recent complaint instead of when the relevant claims were first alleged.

B.

In adopting the view that only the most recent pleading should control the public-disclosure bar's timing, Academi and the district court misapprehend the factual and legal basis of the Supreme Court's decision in Rockwell.

In Rockwell, a nuclear weapons plant attempted to dispose of hazardous waste by combining it with concrete in solid blocks called "pondcrete." 549 U.S. at 461. The Rockwell relator, a plant engineer, reviewed the plans and stated before the procedure was undertaken that it would fail because of flaws in the piping system. Id. The plant later discovered that many of the blocks did in fact leak. Id. When this environmental violation came to light, the relator filed suit alleging that faulty piping was to blame and the plant's claims for payment to

16

the government were therefore fraudulent under the FCA. Id. at 463. During discovery, however, the relator abandoned the piping-defect allegations, instead claiming for the first time a new theory of fraud liability: that the leak was the result of an improper waste mixture. Id. at 465. The case proceeded to trial, and the relator prevailed on his new theory.

The defendant subsequently moved to set aside the verdict under the public-disclosure bar, asserting that the relevant fraudulent scheme (the last filed improper-waste-mixture claim) had been publically disclosed. Id. at 466. The relator conceded that his successful claim was based on a qualifying public disclosure, but he argued that he nevertheless qualified as an "original source." Id. at 467. The pre-amendment public-disclosure bar at issue in Rockwell defined "original source" as an individual with "direct and independent knowledge of the information on which the allegations [of the FCA action] are based." Id.

The Rockwell relator, however, did not contend that he had "direct and independent" information as an original source for his successful improper-waste-mixture theory. Instead, he argued that he was an original source for FCA purposes based on his insider knowledge about the first-pled, but abandoned, piping-system claim. Thus, the relator argued to the Supreme

17

Court that it should focus on the allegations in the first complaint to determine his original source status. Id. at 473.

The Supreme Court found the Rockwell relator's argument without merit, holding that the original source provision did not speak in terms of allegations in the original complaint, "but of the relator's 'allegations' simpliciter." Id. Simply put, the FCA inquiry went to the relevant claim before the court (there, the improper-waste-mixture claim), and evaluating that claim required review of the pleading that first raised it.

The Supreme Court thus held that the original source question required consideration of "(at a minimum) the allegations in the original complaint as amended." Id. Accordingly, even though the relator may have been an original source as to the piping-defect claims asserted in the original complaint, the Court found those allegations irrelevant because the relator had abandoned them in favor of a wholly different fraud theory. Id. at 475 (declining to "determine jurisdiction on the basis of whether the relator is an original source of information underlying allegations that he no longer makes").

Instead of examining the rationale of the Supreme Court's decision in Rockwell, the district court mechanically applied the statement that "courts look to the amended complaint to determine jurisdiction." Id. at 474. As a result, the district court used Relators' last pleading, the second-amended

18

complaint, to determine when the weapons qualification scheme was alleged for purposes of § 3730(e)(4)(A). We find this application of Rockwell faulty, as it takes the Supreme Court's words and holding wholly out of context and fails to analyze the public-disclosure bar on the basis of the relevant fraud alleged.

The Supreme Court in Rockwell focused on the relator's last pleading only because that was where the relevant fraud, the improper-waste-mixture theory, had been pled. The Court sought to match the relevant claim of fraud with the pleading that raised it to determine whether the relator was an original source as to that claim. The Supreme Court's holding effectively reiterated existing law in the qui tam setting, that judicial review is based on a claim by claim analysis. See In re Nat. Gas Royalties, 562 F.3d 1032, 1040 (10th Cir. 2009) ("Relator correctly points out that we use a claim-by-claim analysis to determine whether the allegations in a complaint were publicly disclosed.").

Here, however, the district court failed to evaluate the relevant fraud claim, the weapons qualification scheme, under the pleading that first alleged that fraud: the first-amended complaint. Relators' second-amended complaint merely added further detail about a claim already alleged. On such facts, Rockwell does not limit our public-disclosure analysis to the

19

latest pleading. Recognizing this limitation, our sister circuits have been reluctant to expand Rockwell's last-pleading rule as the district court did below. See, e.g., U.S. ex rel. Jamison v. McKesson Corp., 649 F.3d 322, 328 (5th Cir. 2011) (distinguishing Rockwell and explaining that we "look to [the relator's] original complaint . . . to determine whether it was based on public disclosures of allegations or transactions"); U.S. ex rel. Branch Consultants, LLC v. Allstate Ins. Co., 782 F. Supp. 2d 248, 261 (E.D. La. 2011) ("[Rockwell] did not suggest that the original complaint becomes irrelevant for jurisdictional purposes once an amended complaint is filed. To the contrary, the Court stated that its holding was consistent with '[t]he rule that subject-matter jurisdiction depends on the state of things at the time of the action brought.'").

Focusing our inquiry on when the relevant claims first appeared in the case also aligns with the public-disclosure bar's purpose. See Crandon v. United States, 494 U.S. 152, 158 (1990) ("In determining the meaning of the statute, we look not only to the particular statutory language, but to the design of the statute as a whole and to its object and policy."). We have consistently observed that Congress's goal with the public-disclosure bar was to encourage qui tam suits while preventing only "parasitic" claims "in which relators, rather than bringing to light independently-discovered information of fraud, simply

20

feed off of previous disclosures of government fraud." Siller, 21 F.3d at 1347. The weapons qualification scheme was pled in Relators' first-amended complaint. It was not a new fraudulent scheme first introduced after the Wired.com public disclosure. Where the relevant fraud is first alleged before the public disclosure, as occurred here, the suit is plainly not "parasitic." See Graham Cty., 559 U.S. at 296 n.16.

We therefore conclude that the determination of when a plaintiff's claims arise for purposes of the public-disclosure bar is governed by the date of the first pleading to particularly allege the relevant fraud and not by the timing of any subsequent pleading. See U.S. ex rel. Ackley v. Int'l Bus. Machs. Corp., 76 F. Supp. 2d 654, 660 (D. Md. 1999) (looking to the relator's initial complaint where the fraud was first alleged); U.S. ex rel. Adams v. Wells Fargo Bank Nat'l Ass'n, No. 2:11-CV-00535-RCJ-PAL, 2013 WL 6506732, at *6 (D. Nev. Dec. 11, 2013) (same). In Rockwell terms, the relevant fraud here is the weapons qualification scheme, which predated the Wired.com article in the first-amended complaint. The contrary position, adopted by the district court and pressed by Academi, misreads Rockwell and does not comport with the objectives underlying § 3730(e)(4)(A). The district court thus erred in holding the second-amended complaint was the relevant pleading by which to measure the public-disclosure bar.

21

Academi further argues that, even if the district court erred in applying Rockwell, Relators' second-amended complaint was "the first [pleading] that describes with specificity the weapons qualification scheme." Response Br. 28. Consequently, Academi posits, the timing of the second-amended complaint still controls when the weapons qualification scheme was alleged. We disagree.

In their first-amended complaint, Relators alleged that Academi did not qualify its employees on the M-240 and M-249 belt-fed weapons as required under the government contract and intentionally submitted false documents to the State Department to conceal this failure. See J.A. 39 ("[Academi] fraudulently billed their services to the Department of State, as none of the independent contractors [were] qualified to shoot M-240s and M-249s."). Relators further provided specific dates on which Academi falsified their weapons scores, and alleged that this practice occurred throughout training centers in Afghanistan and Iraq. See id. ("Mr. Beauchamp's score cards from October 4, 2010, April 3, 2010, July 23, 2010, . . . and April 8, 2011 are fraudulent."). These allegations were sufficient for purposes of the public-disclosure bar. See United States v. Triple Canopy, Inc., 775 F.3d 628, 636 (4th Cir. 2015) (explaining that a relator "pleads a false claim when [he or she] alleges that

22

the contractor, with the requisite scienter, made a request for payment under a contract and 'withheld information about its noncompliance with material contractual requirements.'").

At bottom, the public-disclosure bar does not apply here. Relators sufficiently pled the weapons qualifications scheme in their first-amended complaint that came well before the Wired.com article. The district court thus wrongly concluded that this article was a qualifying public disclosure that triggered the bar. And without a qualifying public disclosure, the district court erred by dismissing these claims under either version of § 3730(e)(4)(A). See, e.g., Walburn v. Lockheed Martin Corp., 431 F.3d 966, 974 (6th Cir. 2005) (observing that the existence of a qualifying public disclosure is a threshold condition for application of the bar).[7]

Having concluded that no qualifying public disclosure occurred within the meaning of the FCA, we do not address

---

[7] To be clear, our holding today does not suggest that a plaintiff can raise skeletal claims of fraud and then use such a pleading to avoid the public-disclosure bar when he or she later files an amended complaint that adds necessary facts gleaned from the public domain. We agree with Academi that under such circumstances the initial complaint should not dictate when the relator's claims were first brought. Cf. United States v. Educ. Mgmt. LLC, No. 2:07-cv-461, 2014 WL 2766115, at *2 (W.D. Pa. June 18, 2014) ("[A]n amended complaint which sets forth a fundamentally different fraudulent scheme [does] not relate back in time to the original complaint."). Conversely, however, an amended complaint that merely adds detail to a previously pled cause of action does not reset the clock for when the relator's claims were alleged. That is the circumstance in this case.

Relators' alternative arguments that they were original sources of the information. See U.S. ex rel. Holmes v. Consumer Ins. Grp., 318 F.3d 1199, 1208 (10th Cir. 2003) (en banc) ("[W]here, as here, there was no public disclosure, the . . . inquiry under § 3730(e)(4) ceases, regardless of whether the relator qualifies as an original source.").

IV.

In the final portion of its brief, Academi offers several alternate grounds for affirmance that do not require extended discussion.

First, Academi contends that the Winston complaint is another public disclosure that preempts Relators' claims under the public-disclosure bar. We are unpersuaded. As previously discussed, the Winston complaint was filed after Relators' first-amended complaint that alleged the weapons qualification scheme, and therefore it does not trigger the public-disclosure bar for the same reasons already explained.

Academi next argues that U.S. ex rel. Davis v. U.S. Training Ctr., Inc., No. 1:08cv1244 (E.D. Va. filed Dec. 1, 2008), another FCA case filed against Academi in some of its prior corporate forms, also triggered the public-disclosure bar. The complaint in Davis was unsealed in 2010, and thus the Davis action undisputedly preceded the instant case. Nonetheless, as

24

the district court correctly noted, the scheme alleged in <u>Davis</u> was that Academi committed fraud by recruiting persons who "because of drug use and predilection for violence are . . . unqualified for employment in 'shooter' positions." <u>Beauchamp</u>, 933 F. Supp. 2d at 839. That fraud claim is distinct and unrelated to the weapons qualification scheme at issue here, and thus the disclosures in the <u>Davis</u> litigation also do not trigger the public-disclosure bar. <u>See</u> <u>U.S. ex rel. Found. Aiding the Elderly v. Horizon West, Inc.</u>, 265 F.3d 1011, 1016 (9th Cir. 2001) (explaining that "unrelated allegations of fraud cannot trigger § 3730(e)(4)(A)").

Academi further argues that the <u>Davis</u> case, even if not a disqualifying public disclosure, is a preclusive first-filed action under the FCA's corresponding first-to-file bar. <u>See</u> 31 U.S.C. § 3730(b)(5). In broad strokes, the first-to-file bar prohibits later-filed FCA actions while an earlier-filed case based on the same fraud remains pending. <u>See</u> <u>Kellogg Brown & Root Servs., Inc. v. U.S. ex rel. Carter</u>, 135 S. Ct. 1970, 1974-79 (2015). Academi contends that because the <u>Davis</u> case was pending when this action was filed, the first-to-file bar must apply to preclude Relators' claims. We again disagree. The first-to-file bar applies only to "related actions," and as noted, the fraud claimed here is not related to the fraud alleged in <u>Davis</u>. <u>See</u> <u>Beauchamp</u>, 933 F. Supp. 2d at 837-38.

25

Finally, Academi argues that Relators failed to plead the weapons qualification scheme with the "particularity" that Rule 9(b) requires for fraud claims, thus rendering these claims deficient regardless of the foregoing. See Harrison, 176 F.3d at 783–84. In light of its ruling on the public-disclosure bar, the district court declined to reach this alternative argument. Id. at 846 n.40. We deem it more appropriate to allow the district court to consider Academi's Rule 9(b) argument, if necessary, in the first instance on remand. See Davani v. Va. Dep't of Transp., 434 F.3d 712, 720 (4th Cir. 2006).

V.

For the foregoing reasons, we vacate the portion of the district court's order dismissing Relators' weapons qualification claims under the public-disclosure bar and remand for further proceedings consistent with this opinion.

VACATED AND REMANDED