RICHARD J. SULLIVAN, United States District Judge
Susan Vierczhalek, a medical doctor, brings this qui tam action against Defendant MedImmune, Inc. ("MedImmune"), the manufacturer of a drug called Synagis, which is prescribed to prevent lung infections in premature infants. Vierczhalek alleges that MedImmune violated federal and state law in its effort to increase sales of the drug. Now before the Court is MedImmune's motion to dismiss Vierczhalek's amended complaint (the "Amended Complaint"). (Doc. No. 126.) For the reasons discussed below, that motion is GRANTED.
I. BACKGROUND [1]
Vierczhalek is a licensed pediatrician and attending physician at Bellevue Hospital Center in Manhattan. (Amended Compl. ¶ 44.) She is also the Medical Director of the Bellevue Newborn Nursery and the Bellevue Breastfeeding Program and co-director of Bellevue's premature infant follow-up clinic (the "PINK Clinic"). (Id. ¶ 45.) The PINK Clinic provides care *459 to medically fragile infants, including those born extremely prematurely, after they are discharged from Bellevue's neonatal intensive care unit ("NICU"). (Id. ¶ 45.)
MedImmune, an American drug manufacturer and wholly-owned subsidiary of AstraZeneca PLC, manufactures Synagis (palivizumab ), which is used to reduce the severity of lung infections caused by respiratory syncytial virus ("RSV") in at-risk children. (Id. ¶¶ 1, 120.) Synagis - which costs approximately $5,000 per treatment - received FDA approval in 1998; by 2006, Synagis represented over 87% of MedImmune's total sales. (Id. ¶¶ 4, 121.)
Trinity Homecare LLC ("Trinity") operates a home health care service throughout New York, New Jersey, and Florida. (Amended Compl. ¶ 52.) Part of Trinity's services include dispensing home delivered drugs, such as Synagis. (Id. ) OptionCare, a wholly owned subsidiary of Walgreen Company, Inc., operates treatment sites, respiratory therapy locations, and "home infusion" locations, all of which are authorized to dispense Synagis. (Id. at ¶ 56.)
On April 17, 2009, Vierczhalek filed a qui tam complaint (the "Original Complaint") seeking to recover damages and civil penalties on behalf of the United States and 19 states (the "States")[2] for violating the federal False Claims Act ("FCA"), 31 U.S.C. § 3729(a), and the States' FCA equivalents. (Original Compl. ¶¶ 18-23.) Specifically, Vierczhalek brought claims against MedImmune, Trinity, and OptionCare, alleging that each violated the FCA by promoting the "off-label" use of Synagis - i.e., "the use of [the] drug for any purpose, or in any manner, other than what is approved by FDA as described in the drug's labeling." (Amended Compl. ¶ 89.) Vierczhalek claimed that these off-label promotions "illegally influenced physicians to prescribe ...Synagis when they otherwise would not have prescribed Synagis." (Original Compl. ¶ 4.) Thus, according to Vierczhalek, the "claims ... submitted [by Trinity and OptionCare] were false because Synagis was not medically indicated and necessary." (Id. ¶ 81.) Vierczhalek also alleged that Trinity "falsified" prescriptions for Synagis - in some cases, using Vierczhalek's name and medical license number without her authorization. (Id. ¶¶ 65, 81.)
Like many whistleblower statutes, the federal False Claims Act permits the United States to intervene in qui tam actions such as this one. See 31 U.S.C. § 3730(b)(2). Accordingly, Vierczhalek's case was stayed for a number of years as the United States and the States weighed whether or not to intervene. On July 30, 2013, the United States notified the Court that it was declining to intervene in the action. (Doc. No. 39 at 2.) The State of New York ("New York"), however, continued to investigate the claims made in Vierczhalek's complaint until June 19, 2015, when it filed a notice of election to intervene as to Trinity and OptionCare. See N.Y. State Fin. Law § 190(2)(b). Concurrently with that notice, New York filed a proposed stipulation and order of dismissal, whereby Trinity and OptionCare settled for $22.4 million dollars. (Doc. No. 34 at 8.) All claims against Trinity and OptionCare were thereafter dismissed, and Vierczhalek received $4,040,808.84 as part of the settlement as the original whistleblower. (Id. at 9; N.Y. Fin. Law § 190(6)(a).) New York, nevertheless, continued its investigation of MedImmune.
*460 Nearly two years later, on March 31, 2017, New York filed a complaint-in-intervention against MedImmune, seeking to recover treble damages and civil penalties under the New York State False Claims Act ("NYFCA") and other New York state law. (Doc. No. 49 ("Complaint-in-Intervention").) New York's theory of liability differs from the theory of liability set forth Vierczhalek's Original Complaint. Instead of focusing on the off-label promotion of Synagis, New York alleges that MedImmune engaged in a kickback scheme with Trinity. (Complaint-in-Intervention ¶ 3.) According to the Complaint-in-Intervention, MedImmune gained access to protected health information ("PHI") of infants in hospitals who would be candidates for Synagis. (Id. ¶ 8.) MedImmune then allegedly passed this information along to Trinity, which used this information as patient leads for Synagis. (Id. ¶ 94.)
On November 8, 2017, Vierczhalek filed the Amended Complaint on behalf of the United States and the States (other than New York). (Doc. No. 102.) Eschewing her former off-label claims, Vierczhalek now argues that by engaging in a kickback scheme with Trinity, MedImmune violated the federal False Claims Act and the States' analogs. (Amended Compl. at 101-31.) Specifically, Vierczhalek - closely tracking the Complaint-in-Intervention - now alleges that MedImmune engaged in a specialized effort to increase the sales of Synagis by coordinating with hospitals, pediatricians, and specialty pharmacies (such as Trinity and OptionCare). (Id. ¶ 124.) In order to curry favor with doctors, nurses, and other hospital staff, MedImmune provided "services" to various hospitals. (Id. ¶ 7.) These services included "(i) helping the staff track discharged babies that were likely candidates for Synagis ; (ii) reviewing and completing required paper work ... needed to prescribe Synagis ; (iii) providing lunches to physicians and their staff ... (iv) providing binders and forms ... and (v) paying neonatologists ... for speaking about RSV and Synagis." (Id. ¶ 124.)
According to Vierczhalek, these services were provided with one particular goal in mind: securing PHI of babies in the NICU. (Id. ¶¶ 6, 7.) By cultivating relationships with NICU nurses, discharges nurses, neonatologists, and other hospital staff, MedImmune gained access to NICU logbooks. (Id. ¶ 126.) With information derived from the logbooks, MedImmune could identify infants who would be good candidates for Synagis. (Id. ¶ 6.) Mostly, these were infants who were born both prematurely and in the summer months (RSV season starts in October). (Id. ¶ 128.) Thus, once PHI from the logbooks and patient logs was procured, MedImmune could pass the PHI to outfits like Trinity and OptionCare, which used them like referrals or sales leads. (Id. ¶ 128-29.) The PHI therefore provided specialty pharmacies with the opportunity to contact the infants' caregivers and pediatricians, all in the hope that a doctor would prescribe Synagis to the infant patient. (Id. ¶ 10.) The objective, of course, was to "boost" the sales of Synagis." (Id. ¶ 10.)
According to the Amended Complaint, MedImmune focused its efforts not just on premature babies, but on premature babies born to low-income families. (Id. ¶ 5-10.) To this end, MedImmune zeroed in on hospitals that served Medicaid populations. (Id. ) Because the PHI-driven patient leads were designed to facilitate prescriptions of Synagis, these Synagis treatments were ultimately "paid for through Medicaid claims." (Id. ¶ 25.) Put differently, the crux of Vierczhalek's claim is that "MedImmune improperly obtained leads and referrals that resulted in Trinity submitting claims for Synagis paid by Medicaid." (Id. ) Vierczhalek alleges that this conduct spanned many states and several years, from St.
*461 Francis Medical Center in Lynwood, California (id. ¶ 16) to the Children's Hospital of Philadelphia (id. ), and from at least 2004 through 2012. (Id. ¶¶ 11, 15, 16, 21, 211.) Ultimately, the collaborative efforts were wildly successful: Trinity received over $108 million in Medicaid reimbursements for Synagis from 2006 through 2011. By comparison, 58 other pharmacy providers received a combined $112.9 million in reimbursements over that same five-year period. (Id. ¶¶ 25, 59.) MedImmune, meanwhile, earned $7.3 million in profit from the scheme. (Id. ¶ 25.)
On January 22, 2018, MedImmune moved to dismiss the Amended Complaint pursuant to Federal Rules of Civil Procedure 12(b)(1), 12(b)(6), and 9(b). (Doc. No. 126.) Specifically, MedImmune argues that the Amended Complaint is precluded by the federal False Claims Act's public disclosure bar. 31 U.S.C. § 3730(e)(4)(A). MedImmune also asserts that the Amended Complaint fails to adequately plead a violation of the federal anti-kickback statute or the federal False Claims Act. After the motion was fully briefed in May 2018, the parties submitted supplemental authority on a number of topics through September 24, 2018. (Doc. Nos. 194, 195). The Court will now address the parties arguments.
II. LEGAL STANDARD
On a motion to dismiss under Rule 12(b)(1), the party seeking to invoke the Court's jurisdiction bears the burden of proving that subject matter jurisdiction exists. Robinson v. Overseas Military Sales Corp. , 21 F.3d 502, 507 (2d Cir. 1994). "A case is properly dismissed for lack of subject matter jurisdiction under Rule 12(b)(1) when the district court lacks the statutory or constitutional power to adjudicate it." Makarova v. United States , 201 F.3d 110, 113 (2d Cir. 2000). In deciding a motion to dismiss a complaint pursuant to Rule 12(b)(1), "[t]he court must take all facts alleged in the [pleading] as true and draw all reasonable inferences in favor of [the claimant]." Morrison v. Nat'l Australia Bank Ltd. , 547 F.3d 167, 170 (2d Cir. 2008) (citation and quotation marks omitted).
To survive a motion to dismiss pursuant to Rule 12(b)(6), a complaint must "provide the grounds upon which [the] claim rests." ATSI Commc'ns, Inc. v. Shaar Fund, Ltd. , 493 F.3d 87, 98 (2d Cir. 2007) ; see also Fed. R. Civ. P. 8(a)(2) ("A pleading that states a claim for relief must contain ... a short and plain statement of the claim showing that the pleader is entitled to relief...."). To meet this standard, plaintiffs must allege "enough facts to state a claim to relief that is plausible on its face." Bell Atl. Corp. v. Twombly , 550 U.S. 544, 570, 127 S.Ct. 1955, 167 L.Ed.2d 929 (2007). "A claim has facial plausibility when the plaintiff pleads factual content that allows the court to draw the reasonable inference that the Defendant is liable for the misconduct alleged." Ashcroft v. Iqbal , 556 U.S. 662, 678, 129 S.Ct. 1937, 173 L.Ed.2d 868 (2009). In reviewing a Rule 12(b)(6) motion to dismiss, a court must accept as true all factual allegations in the complaint and draw all reasonable inferences in favor of the plaintiff. ATSI Commc'ns , 493 F.3d at 98. However, that tenet "is inapplicable to legal conclusions." Iqbal , 556 U.S. at 678, 129 S.Ct. 1937. Thus, a pleading that offers only "labels and conclusions" or "a formulaic recitation of the elements of a cause of action will not do." Twombly , 550 U.S. at 555, 127 S.Ct. 1955. If the plaintiff "ha[s] not nudged [its] claims across the line from conceivable to plausible, [its] complaint must be dismissed." Id. at 570, 127 S.Ct. 1955.
III. DISCUSSION
The federal False Claims Act imposes liability on anyone who "knowingly *462 presents, or causes to be presented, a false or fraudulent claim for payment or approval" or who "knowingly makes, uses, or causes to be made or used, a false record or statement material to a false or fraudulent claim." 31 U.S.C. § 3729(a)(1)(A), (B). Although subject to certain limitations, the statute permits any individual (known as a qui tam relator) to bring a civil action on behalf of the United States. 31 U.S.C. § 3730(b)(1). "As originally enacted in 1863, the FCA placed no restriction on the sources from which a qui tam relator could acquire information on which to base a lawsuit." Schindler Elevator Corp. v. United States ex rel. Kirk , 563 U.S. 401, 412, 131 S.Ct. 1885, 179 L.Ed.2d 825 (2011). But in 1943, Congress amended the FCA to prohibit qui tam actions "based upon evidence or information in the possession of the United States ... at the time such suit was brought." Graham Cty. Soil & Water Conservation Dist. v. United States ex rel. Wilson , 559 U.S. 280, 294, 130 S.Ct. 1396, 176 L.Ed.2d 225 (2010) (quoting Act of Dec. 23, 1943, 57 Stat. 609 (codified at 31 U.S.C. § 232(C) (1946) ) ). Thereafter, in 1986, Congress replaced this "[g]overnment knowledge bar," see id. , with a broader public disclosure bar. The public disclosure bar requires courts to dismiss a qui tam relator's complaint "when the relevant information has already entered the public domain through certain channels." Id. at 285, 130 S.Ct. 1396.
Statutorily prescribed at Section 3730(e)(4)(A), the public disclosure bar exists to "strike a balance" between "encouraging private persons to root out fraud" on the one hand, and " 'stifling parasitic lawsuits' in which a relator, instead of plowing new ground, attempts to free-ride by merely reiterating previously disclosed fraudulent acts" on the other. United States ex rel. Beauchamp v. Academi Training Ctr., LLC , 816 F.3d 37, 43 (4th Cir. 2016) (quoting Graham , 559 U.S. at 295, 130 S.Ct. 1396 ). Thus, the statute provides that a qui tam action must be dismissed "if substantially the same allegations or transactions as alleged in the action ... were publicly disclosed ... in a Federal criminal, civil, or administrative hearing in which the [g]overnment ... is a party ... [unless] the person bringing the action is an original source of the information." 31 U.S.C. § 3730(e)(4)(A).
There can be no doubt that New York's Complaint-in-Intervention - which was filed in March 2017, eight months before Vierczhalek's Amended Complaint - qualifies as a prior public disclosure. See 31 U.S.C. § 3730(e)(4)(A) (public disclosures include allegations made in a federal civil proceeding). Indeed, Vierczhalek does not contest that fact. Therefore, the Court is tasked with assessing (i) whether the allegations in Vierczhalek's Amended Complaint are "substantially similar" to those in the Complaint-in-Intervention and, if so, (ii) whether Vierczhalek was nonetheless an "original source of the information" in both. United States ex rel. Kester v. Novartis Pharm. Corp. , 43 F.Supp.3d 332, 346 (S.D.N.Y. 2014).
A. Substantial Similarity
In assessing substantial similarity, courts must inquire whether the public disclosures "exposed 'all the essential elements of the alleged fraud.' " New York ex rel. Khurana v. Spherion Corp. , No. 15 CIV. 6605 (JFK), 2016 WL 6652735, at *12 (S.D.N.Y. Nov. 10, 2016) (quoting United States ex rel. Kirk v. Schindler Elevator Corp. , 437 F. App'x. 13, 17 (2d Cir. 2011) ). If the public disclosures "explicitly identify [the] defendant as a participant in the alleged scheme," then substantial similarity has been established. Kester , 43 F.Supp.3d at 347.
Unlike other situations where the public disclosure is, for instance, a news report, *463 there can be no question that the public disclosure here - New York's filing of the Complaint-in-Intervention - explicitly announced MedImmune's "participation in the fraud" and the scope of the scheme. Id. at 347 (quoting In re Natural Gas Royalties , 562 F.3d 1032, 1041 (10th Cir. 2009) ). Indeed, Vierczhalek's Amended Complaint is a virtual carbon copy of the Complaint-in-Intervention. (Compare Compl.-in-Intervention ¶ 81 ("MedImmune's illegal assistance ... included ... obtaining and providing valuable infant patient leads to Trinity from NICU logbooks") with Amended Compl. ¶ 10 ("MedImmune used baby PHI to provide valuable leads or referrals to Trinity and others").) In fact, the Amended Complaint repeatedly cites to, and quotes from, the State's pleading - in one instance, for over eleven consecutive pages. (See, e.g. , Doc. No. 120 ¶¶ 25, 28-29, 31, 204-06, 213-15, 219-21, 239-47, 249-90.) And Vierczhalek's additional allegations - V violations of numerous state FCA analogs premised on the same fraudulent conduct - merely provide "more specific details about what happened," which "does not negate substantial similarity." United States ex rel. Patriarca v. Siemens Healthcare Diagnostics Inc. , 295 F.Supp.3d 186, 197 (E.D.N.Y. 2018) (quoting United States ex rel. Oliver v. Philip Morris USA Inc. , 826 F.3d 466, 472 (D.C. Cir. 2016) ). With the same theory of fraud permeating the two complaints, the Court is satisfied that the Amended Complaint is "substantially similar" to the Complaint-in-Intervention.
B. Original Source
With that established, Vierczhalek's claims must be dismissed unless Vierczhalek can demonstrate that she was an "original source" of the allegations in the Complaint-in-Intervention. See 31 U.S.C. § 3730(e)(4)(A). Under the statute, an "original source" is one who "has voluntarily disclosed to the [g]overnment the information on which allegations or transactions in a claim are based" or "has knowledge that is independent of and materially adds to the publicly disclosed allegations[,] ... and who has voluntarily provided the information to the [g]overnment before filing an action." 31 U.S.C. § 3730(e)(4)(B).
Vierczhalek states in the Amended Complaint that she "provided to the Attorney General of the United States and to the United States Attorney for the Southern District of New York and appropriate State regulators, prior to the filing of this Complaint, a statement of all material evidence and information related to the Complaint." (Amended Compl. ¶ 42.) In fact, she asserts that she "is the original source of the discovery of the wrongdoing alleged herein," and points to her Original Complaint. (See id. ¶ 43; Doc. No. 179 at 10.) But the Original Complaint belies this assertion. Instead, the Original Complaint centered on "off-label" prescriptions of Synagis. Thus, although Vierczhalek did allege that MedImmune violated the FCA, she focused on the fact that "Defendants ... illegally influenced physicians to prescribe ...Synagis when they otherwise would not have prescribed Synagis." (Original Compl. ¶ 4.) The only allegation remotely resembling the Amended Complaint appears at paragraph 64, which states:
Trinity obtained access to hospital log books or surreptitiously obtained patient records located in the NICU at Bellevue in violation of [HIPAA].... With access to NICU's patient records, Trinity was then able to contact the parents of NICU patients subsequent to their child's discharge from the hospital in an effort to secure them as clients and to deliver home care services, including the administration of Synagis, to those patients. (Id. ¶ 64.) Outside *464 of this one section - which discusses Trinity's conduct, not MedImmune's - the Original Complaint mainly alleged that MedImmune "promoted the 'off-label' use of a prescription drug they knew was not medically necessary." (Id. ¶ 2.) Thus, as the State of New York observed in its opposition to a separate motion to dismiss the Complaint-in-Intervention, "[w]hen the case was filed in 2009, Relator's initial complaint was devoid of any allegations of violations of the [anti-kickback statutes] against any defendant." (Doc. No. 181 at 23 (emphasis added); see also Doc. No. 62 at 3 ("MedImmune's kickback conduct was only uncovered by [New York's] office during its expansion of the investigation."),)
Significantly, even Vierczhalek's counsel conceded that the "allegation about the PHI does not distinguish how Trinity was getting that information because at the time the relator wasn't aware. She was working in one hospital. She had a limited perspective." (Tr. of Dec. 8, 2017 Pre-Motion Conference, Doc. No. 116 at 22:4-7 (emphasis added).) And in later filings in this Court, Vierczhalek again acknowledged that the Original Complaint focused on "when babies did not meet [the] conditions for which Synagis is indicated" and cited cases involving off-label marketing. (Doc. No. 74 at 2.) Vierczhalek's own briefing concedes that she "did not then know specifically that Trinity was conspiring with MedImmune for Bellevue NICU access." (Doc. No. 179 at 10 n.11.) Thus, while Vierczhalek may have been cognizant of some level of PHI misappropriation, she certainly never identified MedImmune's role in the scheme, or connected the misappropriation to the FCA or the anti-kickback statutes. See, e.g. , Kirk , 437 F. App'x at 18 ("[R]egardless of [Relator's] prior knowledge of and suspicions about other aspects of Schindler's contracting practices and its compliance with the VEVRAA ... he lacked direct and independent knowledge of Schindler's failure to file certain reports.").
Because the Original Complaint focuses on a completely different theory of fraud, Vierczhalek "does not plausibly allege that the information [s]he provided [in the Original Complaint] is the information on which h[er] [Amended Complaint] ... [is] based." Khurana , 2016 WL 6652735, at *13 ; see also Beauchamp v. Academi Training Ctr. , 816 F.3d at 44-45 (describing Rockwell Int'l Corp. v. United States , 549 U.S. 457, 127 S.Ct. 1397, 167 L.Ed.2d 190 (2007), as holding that "even though the relator may have been an original source as to [some] ... claims asserted in the original complaint ... those allegations [are] irrelevant because the relator had abandoned them in favor of a wholly different fraud theory."); United States ex rel. Urquilla-Diaz v. Kaplan Univ. , No. 09-cv-20756, 2017 WL 2992197, at *8 (S.D. Fla. July 13, 2017) (rejecting argument that original complaint satisfied the original source requirement where the specific allegations at issue "were not raised until Relator filed his Second Amended Complaint," which post-dated the public disclosure). Allowing Vierczhalek to proceed simply by citing the Original Complaint would be in direct contravention of the Supreme Court's reasoning in Rockwell ; since it would "leave [Vierczhalek] free to plead a trivial theory of fraud" for which she had some direct and independent knowledge "and later amend the complaint to include theories copied from the public domain or from materials in the [g]overnment's possession." Rockwell Int'l Corp. , 549 U.S. at 473, 127 S.Ct. 1397. Accordingly, Vierczhalek's statement that she is "the original source of the discovery of the wrongdoing alleged [in the Amended Complaint]" (Amended Compl. ¶ 42) is a "naked assertion devoid of further factual enhancement."
*465 Iqbal , 556 U.S. at 678, 129 S.Ct. 1937.
Of course, Vierczhalek could still be an original source if she "has knowledge that is independent of and materially adds to the publicly disclosed allegations ... [and] has voluntarily provided the information to the Government before filing an action." 31 U.S.C. § 3730(e)(4)(B) ; see also Ping Chen ex rel. United States v. EMSL Analytical, Inc. , 966 F.Supp.2d 282, 300 (S.D.N.Y. 2013). In this regard, Vierczhalek suggests that she contributed material, independent information to the publicly disclosed allegations - which exclusively alleged a New York based scheme - "by alleging that MedImmune engaged in similar misconduct around the country," (Doc. No. 179 at 10.) But merely expanding the geographic scope of the potential fraud is not "independent of" the Complaint-in-Intervention in any meaningful sense. Instead, taking those same allegations and expanding them nationwide is derivative of - not independent of - New York's undertaking. See United States ex rel. Kreindler & Kreindler v. United Techs. Corp. , 985 F.2d 1148, 1159 (2d Cir. 1993) ("The fact that [relator] conducted some collateral research and investigations" does not establish "independent knowledge.").
Nor does this materially add to the Complaint-in-Intervention, Indeed, in United States ex rel. Winkelman v. CVS Caremark Corp. , 827 F.3d 201 (1st Cir. 2016), the First Circuit rejected relators" claim that revealing "the presence of the fraud in other states ... [means] that they have materially added to the public disclosures." Id. at 212. The court noted that "[w]hen it is already clear from the public disclosures ... that the same potentially fraudulent arrangement operates in other states[,] ... memorializing those easily inferable deductions in a complaint does not suffice to distinguish the relators' action from the public disclosures." Id. at 210. As the Third Circuit reasoned in United States ex rel. Moore & Co., P.A. v. Majestic Blue Fisheries, LLC , 812 F.3d 294 (3d Cir. 2016), the central question is whether the additional information "adds in a significant way to the essential factual background: 'the who, what, when, where and how of the events at issue.' " Id. at 307 (quoting In re Rockefeller Ctr. Props., Inc. , 311 F.3d 198, 217 (3d Cir. 2002) ). Here, Vierczhalek has, at most, augmented the "where," but she has not contributed an iota to the "who," the "what," or the "how" of the scheme alleged in the Complaint-in-Intervention. Thus, with the "key facts" of this case "already thoroughly revealed," U.S. ex rel. Paulos v. Stryker Corp. , 762 F.3d 688, 694 (8th Cir. 2014), Vierczhalek's expansion of liability to other states is neither "independent of," nor does it "materially add[ ] to," the public disclosures. 31 U.S.C. § 3730(e)(4)(A).
Accordingly, because Vierczhalek is not an original source of the allegations in the Amended Complaint, her claim against MedImmune for violating the FCA must be dismissed pursuant to the public disclosure bar. Id.[3]
*466 C. State Claims (Counts 2 - 20)
As noted above, Vierczhalek also brings a number of claims under various state law false claims provisions. (Doc. No. 102 at 108-19.) As an initial matter, it bears noting that most of these state provisions also have analogous public disclosure bars. But a district court ordinarily may "decline to exercise supplemental jurisdiction over a claim [if] ... the district court has dismissed all claims over which it has original jurisdiction." 28 U.S.C. § 1367(c)(3). Indeed, the Second Circuit has made clear that "where the federal claims are dismissed before trial, the state claims should be dismissed as well." Marcus v. AT&T Corp. , 138 F.3d 46, 57 (2d Cir. 1998). Given the dismissal of Vierczhalek's federal claim at this early stage of litigation, the Court declines to exercise supplemental jurisdiction over her remaining state law claims and therefore dismisses them without prejudice. See, e.g. , United States ex rel. JDJ & Assocs. LLP v. Natixis , No. 15-cv-5427 (PKC), 2017 WL 4357797, at *11 (S.D.N.Y. Sept. 29, 2017) ("Having dismissed [relator's] claims under the FCA, the Court declines to exercise supplemental jurisdiction over [relator's] state law claims."); U.S. ex rel. Bilotta v. Novartis Pharm. Corp. , 50 F.Supp.3d 497, 552 (S.D.N.Y. 2014) (dismissing state FCA claims because the court dismissed the federal FCA claim).
IV. CONCLUSION
There is no doubt that Dr. Vierczhalek invested a substantial amount of time and effort seeking to uncover alleged fraud perpetrated by MedImmune and Trinity. And for those efforts, she received over S4 million as part of New York's settlement with Trinity. But the public disclosure bar prevents her from potentially receiving a second payday simply by amending her complaint to mirror New York's very different theory of fraud. Therefore, for the reasons set forth above, Defendant's motion to dismiss the Amended Complaint is GRANTED. The Clerk is respectfully directed to terminate the motion pending at docket number 126.
SO ORDERED.

The facts set forth in this opinion and order are taken from Vierczhalek's original complaint (Doc. No. 70) ("Original Complaint") and Amended Complaint (Doc. No. 102), New York's Complaint-in-Intervention (Doc. No. 49), and documents incorporated therein by reference. See ATSI Commc'ns, Inc. v. Shaar Fund, Ltd. , 493 F.3d 87, 98 (2d Cir. 2007). The Court has also considered MedImmune's memorandum of law in support of its motion to dismiss (Doc. No. 126), Vierczhalek's memorandum of law in opposition to MedImmune's motion to dismiss (Doc. No. 179), and MedImmune's reply memorandum of law in support of its motion (Doc. No. 189).

The states were California, Delaware, Florida, Georgia, Illinois, Indian, Michigan, Montana, Nevada, New Jersey, New Mexico, New York, Oklahoma, Rhode Island. Tennessee, Texas, and Wisconsin, and the Commonwealths of Virginia and Massachusetts. (Original Compl.).

Vierczhalek also obliquely alleges that MedImmune encouraged doctors to prescribe the drug off-season, in greater quantities, and for a broader range of medical conditions, than specified in the FDA-approved label. (Amended Compl. ¶¶ 325-38.) To the extent this is a standalone claim - which is generous, because Vierczhalek doesn't even cite this conduct in setting forth the contours of her FCA claim (see id. ¶ 341-6) - Vierczhalek offers no specifics as to how MedImmune engaged in this supposed off-label promotion. (Id. ¶¶ 326.) Rule 9(b) requires plaintiffs to "identify the speaker [and to] state where and when" the supposedly fraudulent statements were made. United States ex ret. Chorches for Bankr. Estate of Fabula v. Am. Med. Response, Inc. , 865 F.3d 71, 81 (2d Cir. 2017). Therefore, this claim, to the extent it is a separate one, would also be dismissed because Vierczhalek fails to plead it with the requisite particularity.